## UNITED STATES DISTIRCT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDWARD H. ARNOLD, | : | Civil Action No. 1:05-cv-07349 (PAC) |
| Plaintiff | : | |
| v. | : | **SECOND AMENDED COMPLAINT** |
| KPMG LLP, and SIDLEY AUSTIN BROWN & WOOD LLP, | : | |
| Defendants | : | **JURY TRIAL DEMANDED** |

Plaintiff Edward H. Arnold, through his counsel, hereby files this Second Amended Complaint and alleges as follows:

### OVERVIEW OF THE ACTION

1.     This action involves the fraudulent scheme of KPMG LLP ("KPMG"), one of the world's largest accounting firms, and Sidley Austin Brown & Wood LLP f/k/a Brown & Wood LLP ("Brown & Wood" or "Sidley"), one of the world's largest law firms, to line their own pockets with millions of dollars in fees at the expense of their clients.  In the 1990s and continuing through 2000, KPMG created the Foreign Leveraged Investment Program ("FLIP"), Offshore Portfolio Investment Strategy ("OPIS') and Bond-Linked Issue Premium Structure ("BLIPS") investment schemes, which were tax avoidance products that KPMG mass marketed to its clients in order to generate millions of dollars in fees.  KPMG and Sidley induced Plaintiff and hundreds of other individuals to invest millions of dollars in FLIP, OPIS and BLIPS (collectively referred to herein as the "tax shelters"), and KPMG and Sidley each gave Plaintiff (and hundreds of other victims) a false opinion letter stating that it was "more likely than not"

that a deduction taken for losses generated by the tax shelters would be upheld if challenged by the IRS.  In reality, the defendants knew but did not disclose to Plaintiffs that several KPMG tax partners had repeatedly warned KPMG management that the IRS would likely succeed in challenging any deductions taken for losses generated by FLIP, OPIS and/or BLIPS, thus placing KPMG's clients at considerable risk.  Plaintiff paid millions of dollars for investments he never would have made had he known the true facts, and has, *inter alia*, incurred millions of dollars in tax liabilities and interest that he would have deferred and/or minimized absent defendants' misconduct.  Additionally, Plaintiff, in reliance on defendants' representations and advice, structured other investments and made other decisions relating to his finances differently than he would have absent defendants' misfeasance and malfeasance.

2.      On or about August 29, 2005, KPMG entered into a deferred prosecution agreement with the U.S. Justice Department in which KPMG admitted to committing fraudulent conduct in the design and marketing of tax shelters.  In connection with the agreement, a federal grand jury issued an indictment against numerous KPMG executives and partners, accusing the defendants of using various means to fraudulently conceal the shelters from the government, including failing to register them with the IRS, preparing tax returns that disguised the shelters' effects, and using sham attorney-client privilege claims to hide their actions from the government and their clients.  The indictment also accuses many of the KPMG defendants of lying to the IRS and to a Senate investigative panel during public hearings in November 2003, all in an effort to keep the government and KPMG's clients in the dark about their misconduct.  The Justice Department has called the KPMG case "the largest criminal tax case ever filed."

3.      During the period from 1996 through 2000, KPMG sold to Plaintiff one or more tax shelter schemes that defendants, who were fiduciary accountants and lawyers to Plaintiff,

2

represented would generate tax benefits that the IRS was more likely than not to allow.
Defendants received very substantial fees from Plaintiff in exchange for Defendants' professional
services in putting their clients into the tax shelters.

4.      In marketing these tax shelters, KPMG advised potential purchasers to obtain an
independent opinion letter from the law firm of Brown & Wood. Consistent with KPMG's
representations, KPMG and Brown & Wood issued opinion letters to Plaintiff advising that the
one or more tax shelters would generate tax benefits that the IRS was more likely than not to
allow.

5.      Unbeknownst to Plaintiff, Brown & Wood and KPMG collaborated in the design
and marketing of the tax shelters, and KPMG paid Brown & Wood a fee each time Brown &
Wood issued an opinion letter blessing the tax shelters.

6.      KPMG and Brown & Wood knew that, contrary to the representations in their
opinion letters, it was unlikely that the OPIS and BLIPS tax shelters would generate tax benefits
that the IRS would allow.

7.      In the summer of 2001, the IRS announced that the tax benefits purportedly
generated by the tax shelters were not allowable.

8.      KPMG's promotion of its tax shelters has been investigated by the IRS, the
United States Department of Justice, a federal grand jury, and a United States Senate
Subcommittee.

9.      In June 2005, KPMG stated in reference to the tax shelters that it "takes full
responsibility for the unlawful conduct by former KPMG partners."

10.     In selling tax shelters that would generate tax benefits that KPMG knew the IRS
was unlikely to allow while representing to Plaintiff that the IRS was more likely than not to

allow such tax benefits, KPMG breached its contracts with each of the purchasers of the tax shelters, including Plaintiff, committed accounting malpractice, breached the fiduciary duty owed to its clients, and unjustly enriched itself at its clients' expense. Similarly, Brown & Wood knew that the IRS was unlikely to allow the tax benefits supposedly generated by the tax shelters, yet issued to its clients, including Plaintiff, opinion letters stating just the opposite: that such tax shelters would generate tax benefits that the IRS would more likely than not allow. In doing so, Brown & Wood breached its contracts with each of its clients, including Plaintiff, committed legal malpractice, breached the fiduciary duties it owed to its clients, and unjustly enriched itself at the expense of its clients.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the claims of Plaintiff exceed $5 million and Plaintiff is diverse from at least one defendant.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred and caused damages in this district.

## PARTIES

13.     Plaintiff Edward H. Arnold ("Plaintiff") is an individual who is a citizen and resident of Pennsylvania.

14.     Defendant KPMG LLP ("KPMG") is a limited liability partnership organized and existing under the laws of Delaware.  Its principal place of business is located at 345 Park Avenue, New York, NY.  At all relevant times, KPMG provided professional accounting services and advice to Plaintiff.

4

15.     Defendant Sidley Austin Brown & Wood LLP ("Sidley") is a limited liability partnership organized and existing under the laws of Delaware.  In 2001, Sidley merged with Brown & Wood LLP ("Brown & Wood"), and became Brown & Wood's successor in interest. At all relevant times, Brown & Wood maintained its principal office in New York City, and acted as legal counsel to Plaintiff.  Sidley is liable to Plaintiff only by reason of Brown & Wood's acts and because Sidley has succeeded to Brown & Wood's liabilities.

FACTS

16.     Beginning in approximately 1997, KPMG began developing and aggressively marketing the tax shelters to clients who had realized large capital gains in the previous tax year.

17.     Knowing that it clients' gains would be taxed, KPMG approached such clients and advised them to purchase a KPMG tax shelter.

18.     In marketing the tax shelters to clients, KPMG represented that the tax shelters would save clients very substantial amounts in federal income tax liability, in some cases several millions of dollars.

19.     In particular, KPMG made identical written representations to Plaintiff and each purchaser of a tax shelter that the IRS would more likely than not allow the tax benefits generated by the shelter. Beyond these written representations, KPMG orally assured purchasers of the tax shelters that there was little or no risk that the IRS would disallow the promised benefits.

20.     KPMG advised purchasers of the tax shelters to retain the law firm of Brown & Wood to offer them an independent opinion confirming the tax shelter's legality separate and apart from the written opinion provided by KPMG.  KPMG represented to its clients that Brown

5

& Wood had a thorough understanding of the tax shelter transactions, which would allow it to give an intelligent independent opinion on the tax shelters.

21.     Although KPMG advised purchasers of the tax shelters to retain Brown & Wood as an "independent legal advisor," KPMG and Brown & Wood in fact worked together jointly to promote the tax shelters sold by KPMG.

22.     In particular, Raymond J. Ruble, a partner at Brown & Wood, had helped KPMG develop and market the OPIS and BLIPS tax shelters. In a 1997 email, Ruble wrote that his firm had "approved Brown & Wood LLP working with the newly formed tax products group at KPMG on a joint basis in which we would jointly develop and market tax products and jointly share in the fees." An internal KPMG memorandum around the same time states that "we need to consummate a formal strategic alliance with Brown & Wood."

23.     Contrary to KPMG's representations that Brown & Wood would offer an independent opinion on the legality of the KPMG tax shelters, Brown & Wood collaborated extensively with KPMG in drafting opinion letters on KPMG tax shelters.

24.     Moreover, KPMG paid Brown & Wood a fee for each opinion letter written approving a KPMG tax shelter. As a KPMG employee wrote in a 1997 email, "our deal with Brown & Wood is that if their name is used in selling the strategy, they will get a fee. We have decided as a firm that a B & W opinion should be given in all deals."

25.     The opinion letters issued by Brown & Wood on KPMG tax shelters were boiler-plate templates that are almost, if not completely, identical except for date, investor name, investor advisor, and dates and amounts of investment transactions. There is little indication that these are independent opinion letters that reflect any sort of legal analysis. In fact, when

examined as a group, the letters appear to be nothing more than an orchestrated extension of KPMG's marketing machine.

26.    The United States Senate subcommittee that investigated KPMG's sale of tax shelters concluded that "[t]he evidence raises serious questions about the independent status of Sidley Austin Brown & Wood in issuing the legal opinion letters supporting KPMG tax products. The evidence indicates, for example, that KPMG collaborated with the law firm ahead of time to ensure it would supply a favorable opinion letter."

27.    Although Plaintiff did not know it at the time, defendants failed to disclose several material facts to Plaintiffs which, had he known of the true facts, would have resulted in (1) Plaintiff not investing in one or more tax shelters, (2) Plaintiff's adoption of entirely different tax strategies for deferring or minimizing the recognition of income; (3)  Plaintiff's structuring and/or re-structuring of other investments; and (4) different decisions relating to Plaintiff's finances (including but not limited to the timing of sales of securities).

28.    At no point did KPMG ever disclose to Plaintiff or other tax shelter clients the nature of its relationship with Brown & Wood, nor did Brown & Wood ever disclose to its clients the nature of its relationship with KPMG.

29.    On KPMG's recommendation, purchasers of the tax shelters retained Brown & Wood to advise them on the shelters' legality, and paid substantial fees to Brown & Wood.

30.    In its opinion letters on the KPMG tax shelters, Brown & Wood made written representations identical to those made by KPMG in its letters -- that it was more likely than not that the IRS would allow the tax benefits generated by the shelters.

31.    At no point did Brown & Wood disclose to Plaintiff or other tax shelter clients that it had helped KPMG develop and market the tax shelters at issue.  Nor did Brown & Wood

7

ever disclose to Plaintiff or other tax shelter clients that KPMG paid it a fee for each opinion

letter that it issued approving a tax shelter offered for sale by KPMG.

32.    KPMG and Brown & Wood knew, at the time that KPMG sold the tax shelters

and at the time Brown & Wood issued its opinion letters, that it was unlikely that the IRS would

allow the tax benefits that the shelters purported to generate.  Neither KPMG nor Brown &

Wood, however, ever disclosed to Plaintiff or other tax shelter clients that KPMG paid it a fee

for each opinion letter that it issued approving a tax shelter offered for sale by KPMG

33.    As the Senate subcommittee that investigated KPMG's sale of tax shelters

concluded, "the tax product development and approval process used at KPMG was deeply

flawed and led, at times, to the approval of tax products that the firm knew were potentially

abusive or illegal."

34.    In a February 1998 memo, a KPMG analyst discussing the OPIS tax shelter

described it as "smoke and mirrors," and referred to one feature of it as "a sham."  Another

KPMG tax expert wrote in an email concerning the OPIS tax shelter that "the whole thing

stinks."

35.    The IRS requires accounting firms to register tax shelters that might be considered

improper.  At a March 4, 1998 meeting between KPMG and Brown & Wood, to discuss whether

the tax shelters offered by KPMG should be registered, Brown & Wood stated that the tax

shelters should be registered, because the risk of the IRS disallowing it was too high. The head of

KPMG's Department of Professional Practice also recommended that the tax shelters be

registered, due to the risk that the IRS would consider them improper.  KPMG, however did not

register the tax shelters because it knew if it did so, they would be disallowed, thus cutting-off

the firm from the substantial fees the firm was receiving from its unsuspecting clients.

36.    In the summer of 2001, the IRS announced that the tax benefits purportedly generated by the tax shelters were not allowable. At the same time, the IRS began auditing the tax returns of KPMG clients who purchased the tax shelters.

37.    As a result of the IRS audits, Plaintiff and other KPMG clients who purchased the tax shelters have been assessed with millions of dollars in additional federal income tax liability.

38.    David Rivkin, a former partner with KPMG, has recently pleaded guilty to criminal charges growing out of the tax shelter scheme alleged herein.

39.    The United States Senate subcommittee that investigated KPMG concluded that "the evidence . . . is overwhelming in demonstrating KPMG's active and, at times, aggressive role in promoting and profiting from . . . tax products later determined by the IRS to be potentially abusive or illegal tax shelters."

## CLAIMS FOR RELIEF

Count 1: Breach of Contract

40.    The allegations of ¶¶ 1-39 above are incorporated by reference as if set forth in full here.

41.    KPMG entered into oral and written agreements with Plaintiff under which Plaintiff paid substantial fees to KPMG, and in return KPMG promised to provide Plaintiff with one or more tax shelters that would generate tax benefits that the IRS would more likely than not allow.

42.    KPMG breached its agreements with Plaintiff by failing to provide him with one or more tax shelters that would generate tax benefits that the IRS would more likely than not allow.

43.     Plaintiff is entitled to compensatory damages from KPMG, including expectation damages to give him the benefit of the bargain he made with KPMG and put him in the position he would have been in had KPMG performed its contract.

## Count 2: Breach of Contract

44.     The allegations of ¶¶ 1-43 above are incorporated by reference as if set forth in full here.

45.     Brown & Wood entered into agreements with Plaintiff under which Plaintiff paid Brown & Wood a substantial fee, and in return Brown & Wood promised to provide Plaintiff with what Brown & Wood purported to be an independent legal opinion on the likelihood that the IRS would allow the tax benefits purportedly generated by the tax shelters.

46.     Brown & Wood breached its agreements with Plaintiff by failing to provide Plaintiff with an independent legal opinion as to the likelihood that the IRS would allow the tax benefits purportedly generated by the tax shelters.

47.     As Brown & Wood's successor in interest, Sidley is liable to Plaintiff for compensatory damages as a result of Brown & Wood's breach of contract.  Plaintiff is entitled to compensatory damages from Brown & Wood and Sidley, including expectation damages to give him the benefit of the bargain he made with Brown & Wood and put him in the position he would have been in had KPMG performed its contract.

## Count 3:  Breach of Fiduciary Duty

48.     The allegations of ¶¶ 1-47 above are incorporated by reference as if set forth in full here.

49.     KPMG and Brown & Wood held themselves out to Plaintiff as professionals with particular expertise in tax matters.

50.     Plaintiff was a client of both KPMG and Brown & Wood.

51.     KPMG and Brown & Wood each owed Plaintiff fiduciary duties, including a duty of loyalty, a duty of candor, a duty of fair dealing, a duty to avoid self-dealing, an affirmative duty to furnish information and disclose all material facts involving the tax shelters, and a duty to act solely in the interest of Plaintiff, rather than in its own self interests.

52.     KPMG and Brown & Wood breached their fiduciary duties to Plaintiff by failing to act solely in the interests of the Plaintiff.  In particular, in order to earn lucrative fees, KPMG and Brown & Wood advised Plaintiff that the IRS would allow the tax benefits purportedly generated by the one or more tax shelters when KPMG and Brown & Wood knew that it was unlikely that the IRS would allow those benefits.

53.     KPMG and Brown & Wood further breached their fiduciary duties to Plaintiff by failing to disclose to him that KPMG and Brown & Wood collaborated in the design and marketing of the tax shelters, and by failing to disclose to them that KPMG paid Brown & Wood a fee each time Brown & Wood issued an "independent" opinion letter stating that the IRS was more likely than not to allow the tax benefits generated by the shelters.

54.     KPMG and Brown & Wood breached their fiduciary duties to Plaintiff by failing to disclose to him that KPMG and Brown & Wood knew that the tax benefits purportedly generated by the tax shelters were unlikely to be allowed by the IRS.

55.     KPMG breached its fiduciary duties to Plaintiff by misappropriating for its own benefit confidential information of Plaintiff concerning his potential capital gain tax liability.

11

56.     KPMG's and Brown & Wood's breach of fiduciary duties proximately caused substantial damage to Plaintiff.

57.     Sidley, as Brown & Wood's successor in interest, and KPMG are liable to Plaintiff for disgorgement and for all other damages or injury caused to Plaintiff by their breaches of fiduciary duty.

58.     The conduct of KPMG and Brown & Wood was wanton, reckless, outrageous, and/or in willful disregard for another's rights, such that punitive damages should be imposed on KPMG and Sidley, as Brown & Wood's successor in interest.


Count 4: Accounting Malpractice

59.     The allegations of ¶¶ 1-58 above are incorporated by reference as if set forth in full here.

60.     KPMG failed to exercise such skill and care as a reasonably skillful and diligent professional accountant would exercise under the circumstances.  In failing to exercise such due care, KPMG materially deviated from recognized professional standards for accountants.

61.     Absent KPMG's malpractice, Plaintiff would not have purchased one or more tax shelters from KPMG.

62.     KPMG's failure to exercise due care proximately caused Plaintiff to suffer substantial actual damages.

63.     KPMG's conduct was wanton, reckless, outrageous, and/or in willful disregard for another's rights, such that punitive damages should be imposed on it.

64.     Plaintiff is entitled to compensatory and punitive damages from KPMG as a result of KPMG's accounting malpractice.

Count 5: Legal Malpractice

65.     The allegations of ¶¶ 1-64 above are incorporated by reference as if set forth in full here.

66.     Brown & Wood failed to exercise the degree of care, skill, and diligence commonly possessed by a member of the legal community.  In failing to exercise such due care, Brown & Wood materially deviated from the skill and care as a reasonably skillful and diligent lawyer would exercise under the circumstances recognized professional standards for accountants.

67.     Absent Brown & Wood's malpractice, Plaintiff would not have purchased the tax shelters from KPMG.

68.     Brown & Wood's failure to exercise due care proximately caused Plaintiff to suffer actual damages.

69.     Brown & Wood's conduct was wanton, reckless, outrageous, and/or in willful disregard for another's rights, such that punitive damages should be imposed on Sidley, as Brown & Wood's successor in interest.

70.     As a result of Brown & Wood's legal malpractice, Plaintiff is entitled to compensatory and punitive damages from Sidley, Brown & Wood's successor in interest.


Count 6: Unjust Enrichment

71.     The allegations of ¶¶ 1-70 above are incorporated by reference as if set forth in full here.

72.     In connection with the sale of the tax shelters, KPMG and Brown & Wood received from Plaintiff substantial fees well in excess of $100,000.

73.     In receiving such fees, KPMG and Brown & Wood represented to Plaintiff that the tax shelters generated tax benefits that the IRS would allow.

74.     By receiving such fees in connection with the sale of tax shelters whose purported tax benefits KPMG and Brown & Wood knew the IRS was unlikely to allow, KPMG and Brown & Wood were unjustly enriched at the expense of Plaintiff, and it would be against equity and good conscience to permit KPMG and Brown & Wood to retain such fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

    a.    entry of judgment on the claims for breach of contract, unjust enrichment; breach of fiduciary duty; accounting malpractice; and/or legal malpractice in favor of Plaintiff and against KPMG and Sidley, and an award of compensatory damages in favor of Plaintiff and against KPMG and Sidley;

    b.    an award of punitive damages against KPMG and Sidley;

    c.    pre-judgment and post-judgment interest at the maximum rate allowable by law;

    d.    reasonable attorneys' fees and reimbursement of the reasonable costs and expenses of litigating this case; and

    e.    such other or additional relief as this Court deems just and appropriate.

Dated: March 26, 2007

**WILENTZ GOLDMAN & SPITZER P.A.**

Alan Wasserman (AW-3667)
90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
Tel: 732.636.8000
Fax: 732.855.6117

GREENE BROILLET & WHEELER, LLP
Michael J. Avenatti (Pro hac admission pending)
100 Wilshire Blvd, 21st Floor
Santa Monica, CA 90401
Tel: 310.576.1200
Fax: 310.576.1220

**ATTORNEYS FOR PLAINTIFF**

15

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues and causes of action raised by the Second Amended Complaint.

Dated:  March 26, 2007

Respectfully submitted,

**WILENTZ GOLDMAN & SPITZER P.A.**

*Alan Wasserman*
Alan Wasserman (AW-3667)
90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
Tel:  732.636.8000
Fax: 732.855.6117

GREENE BROILLET & WHEELER, LLP
Michael J. Avenatti (Pro hac admission pending)
100 Wilshire Blvd, 21st Floor
Santa Monica, CA 90401
Tel:  310.576.1200
Fax: 310.576.1220

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 26, 2007, I caused a copy of Plaintiff Edward H. Arnold's Second Amended Complaint to be sent via first class mail, postage pre-paid, on the attached service list.

Michael J. Avenatti

## SERVICE LIST

Robert J. Kheel, Esq.
**Wilkie Farr & Gallagher LLP**
787 Seventh Avenue
New York, NY 10019
Tel:  212-728-8000
Fax:  212-728-8111
*Attorneys for Defendant*
*KPMG LLP*

Philip Irwin, Esq.
**Covington & Burling**
1330 Avenue of the Americas
New York, NY 10019
Tel:  212-841-1000
Fax:  212-841-1010
*Attorneys for Defendant*
*Sidley Austin Brown & Wood LLP*

Richard E. Drooyan, Esq.
Allison Stein, Esq.
**Munger Tolles & Olson LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:  213-683-9100
Fax:  213-687-3702
*Attorneys for Defendant*
*Sidley Austin Brown & Wood LLP*