UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
EDWARD H. ARNOLD,                    :

        Plaintiff,                   :

        -against-                    :

KPMG LLP, and SIDLEY AUSTIN           :
BROWN & WOOD LLP,
                                                :

        Defendants.
------------------------------------------------------X

05 Civ. 7349 (PAC)

<u>ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Edward H. Arnold ("Arnold") brings this action against Defendants KPMG ("KPMG"), an accounting firm, and Sidley Austin Brown & Wood ("Brown & Wood"), a law firm, for damages allegedly suffered when he bought tax shelters from KPMG with Brown & Wood's endorsement. The tax shelters, which were effectuated through the purchase and sale of securities, were designed to offset Arnold's income but were determined to be unlawful tax-avoidance schemes. Arnold now seeks relief for federal securities fraud, pursuant to Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5, promulgated thereunder, and for several state law causes of action including: breach of contract, breach of fiduciary duty, unjust enrichment and professional malpractice. Defendants KPMG and Brown & Wood move separately to dismiss Arnold's Third Amended Complaint ("Third Am. Compl.") alleging that his claims are time-barred and inadequately pleaded. KPMG moves to dismiss pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, and Brown & Wood moves to dismiss pursuant to Rule 12(b)(6).

The Court held oral argument on the matter on March 6, 2008. (Transcript of Oral Argument, March 6, 2008 ("Tr.").) The Court ruled that: (1) Arnold's federal securities claims

are time-barred by operation of the relevant statute of limitations (Tr. at 7-11); and (2) Arnold's numerous state law claims merge into single claims for professional malpractice against each defendant (Tr. at 11-12). In light of these holdings, the Court heard oral argument as to: (1) whether the Court should exercise supplemental jurisdiction over the state law malpractice claims in light of the dismissal of the federal claims, and (2) whether the state law malpractice claims are time-barred under the statute of limitations. The Court now exercises its supplemental jurisdiction over the state law malpractice claims and dismisses them as time-barred.

## SUMMARY OF FACTS[1]

Throughout the 1990s, the accounting firm KPMG designed and marketed tax strategies (shelters), which it sold to Arnold and hundreds of other high net worth individuals. The main purpose of the strategies was to create artificial losses for taxpayers to offset their otherwise taxable gains, thereby reducing their taxes. KPMG created three strategies: the Foreign Leveraged Investment Program ("FLIP"), the Offshore Portfolio Investment Strategy ("OPIS") and the Bond-Linked Issue Premium Structure ("BLIPS"). The complaint alleges that KPMG sold to Arnold one or more of these tax shelter schemes and that Arnold purchased and sold securities in order to effectuate and consummate those schemes between September 30, 1997 and December 31, 1997.[2] According to Defendants, KPMG sold Arnold the FLIP strategy in 1997. (Defendant KPMG's Memorandum in Support of its Motion at 2). The strategy involved a complex series of securities transactions in which Arnold purchased shares, options, and warrants in foreign entities in order to effectuate the tax shelters.

Arnold alleges that despite KPMG's knowledge that the tax shelters were unlawful, KPMG actively sold these strategies to the buying public and supplied Arnold and other

---

[1] Unless otherwise noted, the following facts are taken from the Third Amended Complaint, which the Court accepts as true for the purposes of this motion.
[2] Arnold sold the majority of his shares in the scheme in December 1997. (Third Am. Compl. ¶¶ 77-84.)

2

taxpayers with opinion letters stating that the strategies would survive Internal Revenue Service ("IRS") scrutiny. Arnold received such an opinion letter from KPMG on May 13, 1998. (Plaintiff's Memorandum in Opposition to KPMG at 17.) In furtherance of the scheme, (and presumably, to boost confidence in the legitimacy of the tax strategies), KPMG not only provided its own opinion letters, but also negotiated with Brown & Wood to supply legal opinion letters. These legal opinion letters, issued to purchasers of the strategies, further assured the buyers that the tax strategies would "more likely than not" pass IRS scrutiny. The IRS rejected the strategies.

Although Brown & Wood issued its opinion letters under the guise of providing independent legal advice, Arnold contends that the letters constituted nothing more than boilerplate approvals of the scheme, for which Brown & Wood received $50,000 per letter from KPMG. Arnold received an opinion letter from Brown & Wood on August 28, 1998. (Plaintiff's Memorandum in Opposition to Brown & Wood at 11.) Thus, Arnold alleges that KPMG and Brown & Wood, though purporting to work independently, were actually working together in a fraudulent scheme designed to produce millions of dollars in fees through the sale of the tax shelters. Indeed, Arnold alone paid KPMG and Brown & Wood more than $100,000 in fees in connection with the purchase of the strategies.

Arnold further alleges that the scheme did not end with the sale of the securities and the creation of the tax shelters. Instead, he reports that prior to August 2005, both KPMG and Brown & Wood repeatedly assured him that the tax shelters and related securities transactions were legal and legitimate and that KPMG and Brown & Wood "had done nothing wrong." (Third Am. Compl. ¶¶ 4, 5, 86.)

Ultimately, in August 2005, the strategies were revealed to be unlawful tax-avoidance schemes and were disavowed by the IRS. In "the largest criminal tax case ever filed," KPMG entered into a deferred prosecution agreement with the U.S. Department of Justice in which KPMG admitted to fraudulent conduct in the design and marketing of the tax shelters. (Press Release, IRS, KPMG to Pay $456 Million for Criminal Violations (Aug. 29, 2005).)

On August 19, 2005, Arnold filed this suit against KPMG and Brown & Wood in the Southern District of New York on behalf of a putative class of plaintiffs who had participated in the OPIS and BLIPS tax strategies. The original Complaint, however, failed to include a claim based on the FLIP tax strategy, the strategy that Arnold actually purchased. After KPMG notified Arnold of this defect, Arnold filed his First Amended Complaint on September 14, 2005 to include claims based on FLIP. These first two complaints, however, did not include claims for federal securities fraud. Instead, federal jurisdiction was founded on the statute controlling class action complaints, 28 U.S.C. § 1332(d).

On December 23, 2005, this Court stayed Arnold's case in light of another class action against the same defendants, relating to the same tax strategies, in the District of New Jersey. Simon v. KPMG, No. 05 Civ. 3189 (DMC), 2006 WL 1541048, at *1 (D.N.J. June 2, 2006). The Simon case settled, but Arnold opted out of the settlement agreement and instead chose to pursue his claims individually through the renewal of this action in the Southern District of New York.

Pursuant to Arnold's post-Simon request, the Court lifted the stay on this action and granted him leave to amend his complaint once again. Arnold filed a Second Amended Complaint on March 27, 2007, maintaining individual state law causes of action against KPMG and Brown & Wood for breach of contract, breach of fiduciary duty, unjust enrichment, and

professional malpractice.  Thereafter, Defendants told Arnold that there was no basis for federal jurisdiction over the state law claims.[3]  As a result, Arnold sought leave to amend—again—to include federal securities claims that could provide a basis for federal jurisdiction.  Leave to amend was granted, and Arnold filed the Third Amended Complaint on June 12, 2007, alleging (for the first time) federal securities claims in addition to his state law claims.  The Third Amended Complaint is now before the Court.  Arnold seeks $5 million in damages.

## DISCUSSION

### 1. Pleading Requirements

On a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff.  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1975 (2007) (citation and quotation marks omitted).   But mere "formulaic recitation of the elements of a cause of action" will not suffice; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.  To survive a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974; see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

### 2. Supplemental Jurisdiction

It is undisputed that the only basis for federal jurisdiction in this action rests on federal securities law, and Arnold's corresponding federal securities fraud claims.  The Court dismissed the federal claims in its ruling on the record, but the Court retains the discretionary power to entertain Arnold's state law claims under its pendent, or supplemental, jurisdiction.  Pendent

---

[3] The "Jurisdiction and Venue" section of the Second Amended Complaint recited that the same class action statute cited in the first two complaints, 28 U.S.C. § 1332(d), was the basis for federal jurisdiction, but the Second Amended Complaint raised only individual claims.

5

jurisdiction "exists whenever there is a claim [arising under federal law], and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). In order to exercise this jurisdiction, "the state and federal claims must derive from a common nucleus of operative fact." Id.

Supplemental jurisdiction, however, need not be exercised in every case in which it exists. It has "consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Id. at 726; see also Shalam v. KPMG, No. 05 Civ. 3602 (HB), 2005 WL 2139928, at *3 (S.D.N.Y. Sept. 6, 2005) ("Having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.") In deciding whether to exercise supplemental jurisdiction over state claims, the court should consider judicial economy, convenience and fairness to litigants, and whether the court must "resolve any novel or unsettled issues of state law." Mauro v. S. New Eng. Telecomms. Inc., 208 F.3d 384, 388 (2d Cir. 2000).

In this case, it is clear that an exercise of supplemental jurisdiction would be appropriate because both the federal and state claims arise from allegations of a common fraudulent scheme executed by the Defendants, and no novel issues of state law are implicated. Indeed, at oral argument both parties urged the Court to exercise its supplemental jurisdiction over Arnold's state law claims, notwithstanding the dismissal of the federal securities claims.[4] In light of these arguments, the protracted nature of this litigation, the Court's familiarity with the facts of the case and the claims asserted, and in the interests of judicial efficiency, economy of judicial

---

[4] See Tr. at 13-14 (Counsel for Brown & Wood arguing that the Court should exercise supplemental jurisdiction over the state law claims), Tr. at 18 (Counsel for KPMG concurring with Counsel for Brown & Wood), Tr. at 32-33 (Counsel for Arnold also arguing for the Court to exercise supplemental jurisdiction).

resources, and a speedy resolution of the matter, the Court now exercises its supplemental jurisdiction and dismisses Arnold's state law claims.

**3. The State Law Claims and the Statute of Limitations**

Pursuant to the Court's ruling on the record, the only remaining state law claims against KPMG and Brown & Wood are claims for professional malpractice. An action to recover damages for professional malpractice, either legal or accounting, must be commenced within three years from the date of accrual. N.Y. C.P.L.R. § 214(6).[5] The date of accrual, in turn, is the date on which the malpractice occurred, not when it is discovered or when injuries are suffered. See Glamm v. Allen, 57 N.Y.2d 87, 93, 439 N.E.2d 390, 393 (1982). Professional malpractice claims for accountants accrue when the client receives his work product, "since this is the point that a client reasonably relies on the accountant's skill and advice and, as a consequence of such reliance, can become liable for tax deficiencies." Ackerman v. Price Waterhouse, 84 N.Y.2d 535, 541, 644 N.E.2d 1009, 1012 (1994). With regard to legal malpractice, "[i]t is well-established that a cause of action for legal malpractice accrues on the date of the allegedly improper action, not on the date the malpractice was discovered," Xie v. Lin, No. 06 Civ. 142 (HB), 2007 WL 423806, at *3 (S.D.N.Y. Feb. 7, 2007), "even if the aggrieved party is then ignorant of the wrong or injury." Ackerman, 84 N.Y.2d at 541, 644 N.E.2d at 1012. The critical inquiry, then, is when the malpractice occurred—not when the client discovered it. McCoy v. Feinman, 99 N.Y.2d 295, 301, 785 N.E.2d 714, 718 (2002).

In this case, Defendants argue that the three-year statute of limitations accrued when the opinion letters were issued. Arnold contends that because the fraudulent scheme was continuous, the claim did not accrue against either Defendant until KPMG revealed its fraudulent

---

[5] N.Y. C.P.L.R. § 214 states, "the following actions must be commenced within three years: . . . (6) an action to recover damages for malpractice . . . regardless of whether the underlying theory is based in contract or tort; . . . ."

7

conduct by entering into a deferred prosecution agreement with the Department of Justice in August 2005. In the alternative, Arnold argues that the statute of limitations was tolled.

The Court rejects the argument that the appropriate date of accrual was August 2005; the claim for malpractice accrued when each Defendant issued its opinion letter. The opinion letter constitutes the professional work product on which Arnold relied, and the case law makes clear that a malpractice action accrues at the time of the malpractice, not later. See, e.g., Xie, 2007 WL 423806, at *3; Glamm, 57 N.Y.2d at 93, 439 N.E.2d at 393. With respect to the accounting malpractice claim, the statute of limitations began to run, at the latest, on May 13, 1998, when KPMG issued its formal opinion letter to Arnold. Similarly, the statute of limitations on the legal malpractice claim against Brown & Wood began to run on August 28, 1998, when it issued its opinion letter to Arnold. Applying the three-year statute of limitations to those dates, Arnold's claims were time-barred as of May 13, 2001, and August 28, 2001, respectively— nearly four years before the filing of the original complaint on August 19, 2005. Therefore, absent tolling, Arnold's malpractice claims are time-barred.

Arnold next argues that the statute of limitations was tolled, either under the doctrine of continuous representation or because of fraudulent concealment. Defendants, in contrast, maintain that there is no basis for tolling.

**(1) Tolling Due to Continuous Representation**

The continuous representation doctrine holds that the statute of limitations on a legal malpractice claim "is tolled while the attorney continues to represent the client as to the same matter underlying the malpractice claim." Kvetnaya v. Tylo, --- App. Div. ---, 2008 WL 669857, at *1 (2d Dep't Mar. 11, 2008) (citing Shumsky v. Eisenstein, 96 N.Y.2d 164, 167-68, 750 N.E.2d 67, 70-71 (2001)). Continuous representation requires that the parties possess "a mutual

understanding of the need for further representation on the specific subject matter underlying the malpractice claim." Id.; see also Williamson ex rel. Lipper Convertibles, L.P. v. PricewaterhouseCoopers, 9 N.Y.3d 1, 9-10, 872 N.E.2d 842, 847 (2007). The parties must explicitly contemplate that the professional relationship continue, Williamson, 9 N.Y.3d at 10, 872 N.E.2d at 847, and that the continued representation occur "in connection with the particular transaction which is the subject of the action," Mitschele v. Schultz, 36 A.D.3d 249, 253, 826 N.Y.S.2d 14, 18 (1st Dep't 2006) (citation omitted).

Arnold argues that he had such a continuing professional relationship with the Defendants, and that the statute of limitations should therefore be tolled. He fails, however, to adequately plead this assertion. Arnold contends that "[p]rior to August 2005, KPMG and [Brown & Wood] repeatedly assured Plaintiff that the tax shelters and related securities transactions were legitimate and legal, and that KPMG and [Brown & Wood] had done nothing wrong." (Third Am. Compl. ¶ 4.) These "repeated assurances," however, do not constitute "continuous representation" absent the explicit and mutual agreement to remain in a professional relationship. Williamson, 9 N.Y.3d at 10, 872 N.E.2d at 847. Arnold fails to allege the requisite agreement existed with regard to the tax scheme here; he sets forth no allegations that the parties had a specific and mutual understanding that their professional relationship continue beyond the purchase of the schemes and the receipt of the opinion letters. Accepting the allegations as true and viewing them in the light most favorable to Arnold, the Court finds that Arnold has failed to adequately allege continuous representation. Arnold's bald allegations of repeated denials of wrongdoing, standing alone, are insufficient to toll the statute of limitations on the basis of continuous representation.

**(2) Tolling Due to Fraudulent Concealment**

Alternatively, Arnold argues that the statute of limitations on a malpractice claim may be tolled when there is fraudulent concealment of the wrongdoing, but New York law is precisely the opposite. Fisher v. Reich, No. 92 Civ. 4158 (MBM), 1995 WL 23966, at *10 (S.D.N.Y. Jan. 10, 1995). Fisher v. Reich holds that under New York law a claim for malpractice is not tolled by fraudulent concealment. Id. It states that "because New York courts have rejected the proposition that fraudulent concealment tolls the statue of limitations in professional malpractice cases, plaintiffs cannot use this doctrine to preserve their malpractice claim." Id. (emphasis added) (citing "Siegel v. Kranis, 274 N.Y.S.2d 968, 970 (N.Y. Sup. Ct. 1966), rev'd on other grounds, 288 N.Y.S.2d 831 (N.Y. App. Div. 1968) ("New York State takes the view that fraudulent concealment does not toll the statute of limitations"); Tulloch v. Haselo, 218 N.Y.S. 139, 142-43 (1926) (fraudulent concealment in malpractice action merely goes to the enhancement of damages, but does not extend the statute of limitations).")

Even if fraudulent concealment could toll the statute of limitations on the professional malpractice claims, Arnold has not pleaded it with the requisite specificity. Courts in this district have made clear that plaintiffs asserting fraudulent concealment as a basis for tolling must "specify in [the] pleadings: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Grynberg v. ENI S.P.A., No. 06 Civ. 6495 (RLC), 2007 WL 2584727, at *4 (Sept. 5, 2007). It is not enough for a plaintiff to rely on general statements describing a broad conspiracy. See Mahoney v. Beacon City Sch. Dist., 988 F. Supp. 395, 400 (S.D.N.Y. 1997) ("The evidence submitted by plaintiff to support a fraudulent concealment claim must not be conclusory, and must establish a conspiracy or

other fraudulent wrong that precluded plaintiff's possible discovery of the harm she suffered.") (citing Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995)).

Arnold does not specifically allege that KPMG or Brown & Wood concealed their fraud from him directly; he merely contends that they engaged in a large-scale conspiracy to defraud the IRS, government investigators, and "their clients, including Plaintiff." (Third Am. Compl. ¶ 5). For example, Arnold claims that "numerous KPMG executives and partners employed various means to fraudulently conceal the true facts relating to the shelters, including failing to register them with the IRS, preparing tax returns that disguised the shelters' effects, and using sham attorney-client privilege claims to hide their actions from the government and their clients." (Third Am. Compl. ¶ 5). At no point, however, does Arnold allege a single conversation or other communication between a representative of KPMG or Brown & Wood and himself, nor does he provide the date of a communication, identify a speaker, or proffer the exact contents of an interaction. Bald, conclusory allegations of a vast conspiracy are insufficient; Arnold has failed to adequately plead his claim of fraudulent concealment.

### 4. Denial of Request to Re-Plead

Finally, Plaintiff requests permission to re-plead yet again. In defense of this request, Arnold argues that since the first three amendments resulted from Defendants' suggestions of defects, he is now entitled to the benefit of the Court's impressions on the adequacy of the pleadings.[6] Pleadings, however, are not essays to be graded by the District Court with allowances for editing and revision. The fact that leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), does not mean that leave to re-plead is to be granted in

---

[6] At oral argument, Plaintiff's counsel stated that "we would respectfully request an opportunity to amend for the following reasons: [number one], this is the first time that we have had the benefit of the Court's comments relating to the sufficiency or insufficiency of the complaint. . . . [and] [n]umber two, this is potentially a case dispositive motion." (Tr. at 31.)

11

perpetuity. There is a reason for the statute of limitations—it is repose. It has been years since the alleged fraud occurred and Plaintiff has been allowed his initial complaint and three amendments. Any amendments would appear to be futile, and now, ten years after the alleged wrong, it is time to bring this matter to a close.

In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court specifically articulated that "repeated failure to cure deficiencies by amendments previously allowed" constitutes a reasoned basis on which to deny a motion to amend.[7] Arnold has repeatedly failed to cure his deficiencies here. There have been multiple opportunities for pleading, and one opportunity to recover as part of the Simon class action settlement. The direction that amendments shall be "freely given" does not contemplate serial adjustments to the pleadings based on a federal court's coaching and guidance. His request for leave to re-plead is denied.

## CONCLUSION

For the reasons stated above and on the record on March 6, 2008, Defendants' motions to dismiss are GRANTED. The Clerk of Court is directed to terminate this action and enter judgment.

Dated: New York, New York
       March 28, 2008

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

---

[7] The Supreme Court stated in full, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Id.

perpetuity. There is a reason for the statute of limitations—it is repose. It has been years since the alleged fraud occurred and Plaintiff has been allowed his initial complaint and three amendments. Any amendments would appear to be futile, and now, ten years after the alleged wrong, it is time to bring this matter to a close.

In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court specifically articulated that "repeated failure to cure deficiencies by amendments previously allowed" constitutes a reasoned basis on which to deny a motion to amend.[7] Arnold has repeatedly failed to cure his deficiencies here. There have been multiple opportunities for pleading, and one opportunity to recover as part of the Simon class action settlement. The direction that amendments shall be "freely given" does not contemplate serial adjustments to the pleadings based on a federal court's coaching and guidance. His request for leave to re-plead is denied.

## CONCLUSION

For the reasons stated above and on the record on March 6, 2008, Defendants' motions to dismiss are GRANTED. The Clerk of Court is directed to terminate this action and enter judgment.

Dated: New York, New York
March 28, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[7] The Supreme Court stated in full, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Id.

12